IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| DELAWARE VALLEY PLUMBING SUPPLY, INC. | 1:20-CV-08257-NLH-KMW |
| Plaintiff, | CIVIL ACTION |
| v. | |
| MERCHANTS MUTUAL INSURANCE COMPANY, JOHN DOES (1-10), AND ABC COMPANIES (1-10) | |
| Defendant. | |

---

**BRIEF IN SUPPORT OF MERCHANTS MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 12(B)(6)**

**ORAL ARGUMENT REQUESTED**

---

Goldberg Segalla LLP
1037 Raymond Boulevard,
Suite 1010
Newark, NJ
T: 973-681-7000
F: 973-681-7101
**Attorneys for Defendant
Merchants Mutual Insurance Company**

Nicole M. Crowley (Attorney No. 250152017)
Of Counsel and On the Brief

27152594.v1

## Table of Contents

I.    INTRODUCTION .................................................................................................. 1
II.   STATEMENT OF FACTS.................................................................................... 2
    A.   THE DELAWARE VALLEY COMPLAINT...................................................... 2
    B.   THE MERCHANTS POLICY............................................................................ 3
       1.  The Policy's Commercial Property Coverage Part Extends Coverage Only
           For Direct Physical Loss or Damage to Property .......................................... 3
       2.  The Policy Includes the Virus Or Bacteria Exclusion................................... 5
III.  LEGAL STANDARDS......................................................................................... 6
    A.   MOTION TO DISMISS STANDARD ............................................................... 6
    B.   NEW JERSEY COURTS ENFORCE INSURANCE CONTRACTS AS WRITTEN................. 7
IV.   ARGUMENT ........................................................................................................ 8
    A.   DELAWARE VALLEY HAS NOT PLED "DIRECT PHYSICAL LOSS OF OR DAMAGE TO
         PROPERTY"................................................................................................... 8
    B.   THE POLICY'S "CIVIL AUTHORITY" COVERAGE PART DOES NOT APPLY BECAUSE
         DELAWARE VALLEY HAD ACCESS TO THE INSURED PREMISES AND THERE IS NO
         PROPERTY DAMAGE ................................................................................. 11
    C.   THE VIRUS OR BACTERIA EXCLUSION BARS COVERAGE ..................... 12
V.    CONCLUSION................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ace Am. Ins. Co. v. Adm'rs of the Tulane Educ. Fund*,
   No. 07-3749, 2008 U.S. Dist. LEXIS 66299, at *18-*19 (E.D. La. Aug. 28,
   2008) ................................................................................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................................................6

*Bartley v. Travelers*,
   Civil Action No. 19-15322(MAS)(LHG), 2020 U.S. Dist. LEXIS 73661
   (D.N.J. Apr. 27, 2020) .......................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................6

*Borough of Moosic v. Darwin Nat. Assur. Co.*,
   556 Fed. App'x 92, 95 (3d Cir. 2014)..................................................................................7

*In re Burlington Coat Factory Sec. Litigation*,
   114. F. 3d 1410, 1426 (3d Cir. 1997)..................................................................................7

*Certain Underwriters at Lloyds of London v. Creagh*,
   563 F. App'x 209 (3d Cir. 2014) .......................................................................................13

*Clarke v. State Farm Fla. Ins.*,
   123 So. 3d 583 (Fla. Dist. Ct. App. 2012) ........................................................................14

*Dickie Brennan & Co. v Lexington Ins. Co.*,
   636 F.3d 683 (5th Cir. 2011) ............................................................................................11

*Doe v. Univ. of the Scis.*,
   961 F.3d 203 (3d Cir. 2020)................................................................................................6

*Fischbein v. Olson Research Grp., Inc.*,
   959 F.3d 559, 561 (3d Cir. 2020)........................................................................................6

*Gavrilides Management Co. v. Michigan Insurance Co.*,
   No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020).................................................1, 9, 13

*Lambi v. Am. Family Mut. Ins. Co.*,
   No. 4:11-CV-00906-DGK, 2012 U.S. Dist. LEXIS 78563, at *15-*16 (W.D.
   Mo. June 6, 2012) .............................................................................................................14

*Mayer v. Belichick*,
 605 F.3d 223 (3d Cir. 2010) ........................................................................................... 6

*Motorists Mut. Ins. Co. v. Hardinger*,
 131 Fed App'x 823 (3d Cir. 2005) .............................................................................. 10

*Paternostro v. Choice Hotel Int'l Servs. Corp.*,
 No. 13-0662, 2014 U.S. Dist. LEXIS 161157 (E.D. La. Nov. 14, 2014) ................... 13

*Pennbarr Corp. v. Ins. Co. of N. Am.*,
 976 F.2d 145 (3d Cir. 1992) ........................................................................................... 8

*Pittston Co. Ultramar Am. v. Allianz Ins. Co.*,
 124 F.3d 508 (3d Cir. 1997) ........................................................................................... 8

*Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*,
 311 F.3d 226 (3d Cir. 2002) ......................................................................................... 10

*Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*,
 105 F. Supp. 3d 464 (E.D. Pa. 2015) .......................................................................... 13

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
 No. 20 CIV 3311 (VEC) (S.D.N.Y. May 14, 2020) ........................................... 1, 9, 10

*State Nat. Ins. Co v. Cty. Of Camden*,
 10 F. Supp. 3d 568 (D.N.J. 2014) .................................................................................. 7

*Tate v. One Beacon Ins. Co.*,
 328 S.W.3d 262 (Mo. Ct. App. 2010) ......................................................................... 14

*Tellabs v. Makor Issues & Rights*,
 551 U.S. 308 (2007) ........................................................................................................ 6

*United Air Lines v. Insurance Company of the State of Pennsylvania*,
 439 F.3d 128 (2d Cir. 2006) ......................................................................................... 11

I.        **INTRODUCTION**

Delaware Valley Supply, Inc. ("Delaware Valley") seeks a declaratory judgment that it is entitled to insurance coverage from Merchants Mutual Insurance Company ("Merchants") for business income losses allegedly caused by the Coronavirus global pandemic and resulting government orders that restricted access to businesses. Merchants issued a Commercial Businessowners Policy (the "Merchants Policy" or "Policy") to Delaware Valley that includes coverage for losses caused by direct physical loss of or damage to property and not pure economic losses caused by apprehension of, or efforts to contain, a pandemic. Moreover, even if there were plausible allegations of direct physical damage in the Complaint, which there are not, the Policy broadly excludes from coverage any business income losses caused by or resulting from a virus. Thus, Plaintiff has no legal basis on which to claim coverage from Merchants.

Moreover, as set forth more fully below, two courts have determined that governmental restriction of access to properties in order to contain the COVID-19 pandemic is not physical loss of or damage to property under policies strikingly similar to the Merchants Policy. See *Gavrilides Management Co. v. Michigan Insurance Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020) (granting insurer motion to dismiss); *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 CIV 3311 (VEC) (S.D.N.Y. May 14, 2020) (denying policyholder's preliminary injunction motion based upon failure to demonstrate likely success on the merits).

Thus, Delaware Valley's economic losses suffered as a result of the COVID-19 pandemic are not covered by the Merchants Policy. Plaintiffs have not suffered loss to or damage to property, and the "Virus or Bacteria" exclusion applies to Plaintiff's claims in full. Thus, this Court should dismiss Delaware Valley's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## II.  STATEMENT OF FACTS

### A. The Delaware Valley Complaint

Delaware Valley owns two plumbing fixates showrooms, one in Voorhees, New Jersey and another in King of Prussia, Pennsylvania. It commenced this lawsuit on June 1, 2020, seeking a declaration that it is entitled to coverage under the Merchants Policy for losses suffered when its showrooms closed as a result of the COVID-19 global pandemic and Governmental Orders[1] designed to slow the spread of the disease. Delaware Valley alleges that between March 9, 2020 and March 21, 2020, the Governor of New Jersey, Governor of Pennsylvania and the President of the United States issued Proclamations and Orders declaring a state of emergency as a result of COVID-19 and subsequently restricted access to its showrooms. *See* Comp. ¶¶ 16 – 22. Delaware Valley claims it was "required to close its showrooms" as a result of the Governmental Orders. Comp. ¶ 22.

However, Delaware Valley's Complaint is devoid of any facts to support its bald assertion that it sustained property damage. Delaware Valley also points to no

---

[1] For the convenience of the Court, a copy of Governor Murphy's Executive Order 103 is attached hereto as Exhibit 1 and Executive Order 107 is attached as Exhibit 2. Governor Wolf's Executive Order dated March 19, 2020 is attached as Exhibit 3.

27152594.v1                                                  2

property in the one-mile vicinity of its showrooms that have been physically damaged as a result of COVID-19.

Notwithstanding the absence of any allegation that Delaware Valley's showrooms sustained property damage, Delaware Valley seeks declaratory relief based on a general allegation that it "suffered an insured loss" and that Merchants must "pay the full amount of losses incurred as a result of the Government Actions." Comp., Counts I-IV.

### B. The Merchants Policy

Merchants issued the Policy to Delaware Valley for a policy period of July 1, 2019 to July 1, 2020. A copy of the Policy is attached as Exhibit 4. The Policy is a Commercial Lines Policy with two parts: (1) Commercial Property; and (2) Commercial General Liability. This suit only involves the Commercial Property Coverage Part.[2]

#### 1. The Policy's Commercial Property Coverage Part Extends Coverage Only For Direct Physical Loss or Damage to Property

Subject to all of its terms, and conditions, the Policy provides coverage to Delaware Valley for the loss of "Business Income" it sustains due to the necessary suspension of its operations, but only where the suspension is "*caused by direct physical loss of or damage to property*" at the premises described in the Policy. Ex. 4. at 21 (Form BP 00 03 01 10) (emphasis added). Such Business Income is provided solely during the "period of restoration" which begins "72 hours after the time of *direct*

---

[2] For the convenience of the Court, the pages of the Policy have been numbered sequentially on the bottom of each page. Citations are to the Policy pages as well as the applicable Policy Forms. Ex. 4 at 13 (Form BP 00 03 01 10).

27152594.v1          3

*physical loss or damage* for Business Income Coverage" and ends on the earlier of when the property is "repaired, rebuilt or replaced," or the business is resumed at a new permanent location. *Id.* at 25, 50 (Form BP 00 03 01 10) (emphasis added). The loss or damage also must be "caused by or result from a Covered Cause of Loss," which is defined as "Risks of direct physical loss." *Id.* at 21, 22 (Form BP 00 03 01 10).

The Policy also provides coverage for "Extra Expense," meaning necessary expenses the insured incurs during the "period of restoration" that it would not have incurred if "there had been *no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.*" Ex. 4 at 27 (Form BP 00 03 010 10) (emphasis added).

Additionally, the Policy extends coverage under the "Civil Authority" part which provides as follows:

> When a Covered Cause of Loss causes **damage to property** other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the **damaged property** is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; **and**
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Ex. 4 at 27, 28 (Form BP 00 03 01 10) (emphasis added). The "described premises" for purposes of the Civil Authority coverage is Delaware Valley's showrooms.[3]

All of the coverage grants described above require that there must be physical loss of or damage to property caused by a "Covered Cause of Loss" in order to potentially trigger coverage under the Merchants Policy.

## 2. The Policy Includes the Virus Or Bacteria Exclusion

Even if Delaware Valley alleged property damage as discussed above in Section II(B)(1), which Merchants denies, the Policy also contains the Virus Or Bacteria exclusion. It states that Merchants "will not pay for loss or damage caused directly or indirectly by":

> j. Virus Or Bacteria
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.
>
> (2) However, the exclusion in paragraph (1) does not apply to loss or damage caused by or resulting from "fungi", wet rot or dry rot. Such loss or damage is addressed in Exclusion i.;
>
> (3) With respect to any loss or damage subject to the exclusion Paragraph (1), such exclusion supersedes any exclusion relating to "pollutants".

Ex. 4 at 35, 37 (Form BP 00 03 01 10).

---

[3] Plaintiff's showrooms are located at 476 Centennial Boulevard, Voorhees, NJ 08043 and 450 S Henderson Road, King of Prussia, PA 19406.

### III. LEGAL STANDARDS

#### A. Motion To Dismiss Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter to state "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More is required than "labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Nor will courts accept legal conclusions couched as factual allegations to satisfy pleadings requirements. *Iqbal,* 556 U.S. at 679. "Factual allegations must be enough to raise a right to relief above the speculative level," and where they do not adequately plead "a claim of entitlement to relief," dismissal is warranted. *Twombly,* 550 U.S. at 555, 558; *Fischbein v. Olson Research Grp., Inc.,* 959 F.3d 559, 561 (3d Cir. 2020) (on a motion to dismiss, "we disregard threadbare recitals of the elements of a cause of action, legal conclusions and conclusory statements").

In deciding a Rule 12(b)(6) motion, the Court may consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Tellabs v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007) (on a Rule 12(b)(6) motion, the court may consider "documents incorporated into the complaint by reference and matters of which a court may take judicial notice"); *Doe v. Univ. of the Scis.*, 961 F.3d 203 (3d Cir. 2020)

("document integral to or explicitly relied upon in the complaint may be considered" in a Rule 12(b)(6) motion").

Delaware Valley's claims are solely for insurance coverage under the Merchants Policy and the Court can consider the entire policy, which is attached in full to this Memorandum, in ruling on Merchants' 12(b)(6) motion. *See Borough of Moosic v. Darwin Nat. Assur. Co.*, 556 Fed. App'x 92, 95 (3d Cir. 2014) (holding that the district court did not err in considering an insurance policy not attached to the complaint in deciding a Rule 12(b)(6) motion to dismiss); *Bartley v. Travelers*, Civil Action No. 19-15322(MAS)(LHG), 2020 U.S. Dist. LEXIS 73661, at *5 (D.N.J. Apr. 27, 2020) ("Courts in this District have frequently considered insurance policies and denial letters when deciding motions to dismiss."). Similarly, the Governmental Orders attached to, or referenced in, the Amended Complaint are matters of public record that may be considered in ruling on the motion. *See In re Burlington Coat Factory Sec. Litigation*, 114. F. 3d 1410, 1426 (3d Cir. 1997) (District Court evaluating a motion to dismiss may consider any "document integral to or explicitly relied upon in the complaint").

### B. New Jersey Courts Enforce Insurance Contracts as Written

In New Jersey, contract interpretation is a question of law that requires the Court to "determine the intention of the parties from the language of the policy" and to enforce clear and unambiguous terms. *State Nat. Ins. Co v. Cty. Of Camden*, 10 F. Supp. 3d 568, 574-75 (D.N.J. 2014) citing *Simonetti v. Selective Ins. Co.* 372 N.J. Super 421 (App. Div. 2004). "'[W]hen the terms of an insurance contract are clear, . .

. it is the function of a court to enforce it as written and not make a better contract for either of the parties." *Pittston Co. Ultramar Am. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997) citing *State v. Signo Trading Int'l, Inc.,* 130 N.J 51 (N.J. 1992). The Court "should not torture the language of [a] policy to create ambiguity." *Pennbarr Corp. v. Ins. Co. of N. Am.*, 976 F.2d 145, 151 (3d Cir. 1992).

## IV. ARGUMENT

Delaware Valley sets forth no facts to support its claim that its alleged losses are covered by the Merchants Policy. As a preliminary matter, Delaware Valley does not allege that its Business income loss is the result of "direct physical loss of or damage to property" that required it to suspend its operations. Rather, Delaware Valley alleges, in conclusory fashion, that it suffered "a direct physical loss of and damage to property because it has been unable to use its property for its intended purpose." As set forth below, this is insufficient as a matter of law to satisfy the policy insuring agreement. Similarly, Delaware Valley does not allege that property within a one-mile radius of its showrooms sustained property damage that would come within the Civil Authority Coverage. Most significant, even if the Delaware Valley Complaint did allege in the first instance, a covered cause of loss, Delaware Valley's Complaint would still be subject to dismissal by virtue of the clearly applicable "Virus or Bacteria" Exclusion.

### A. Delaware Valley Has Not Pled "Direct Physical Loss of Or Damage to Property".

As discussed above, the Merchants Policy provides coverage for loss of "Business income" where it is "caused by direct physical loss of or damage to property"

at the premises. Ex. 4. at 21 (Form BP 00 03 01 10) (emphasis added). To date, two courts have specifically held that the present COVID-19 pandemic does not amount to "physical loss of or damage to property".

In *Gavrilides Management Co. v. Michigan Insurance Co.*, No. 20-258-CB-C30 (Mich. Cir. Ct. July 1, 2020), Judge Draganchuk of the Michigan Circuit Court dismissed two Lansing Michigan restaurants' complaints because they failed to plead "direct physical loss of or damage to" property. The Court explained that direct physical loss "has to be something with material existence, something that is tangible, something . . . that alters the physical integrity of the property." Tr. of July 1, 2020 Hearing at 19 (attached as Ex. 5). Thus, the court ruled that a loss of business due to executive orders shutting down the restaurants for dining as a result of COVID-19 did not satisfy the policy requirement of physical damage to property.[4]

Similarly, a federal court in New York denied a policyholder's preliminary injunction motion seeking to require an insurer to deliver policy proceeds to its insured, on the grounds that the policyholder could not show a likelihood of success on the merits. The Court held that "New York law is clear that this kind of business interruption needs some damage to property to prohibit you from going [to the property]". Tr of May 14, 2020 Hearing at 15 (attached as Ex. 6), *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20 Civ. 3311 (VEC) (S.D.N.Y.) (court explaining that

---

[4] The court also rejected as "simple nonsense" the policyholder's argument that the physical damage requirement could be met "because people were physically restricted from dine-in services." Ex. 5 at 20. As the court noted, that allegation "comes nowhere close to meeting the requirement that there needs to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id.*

27152594.v1     9

COVID-19 "damages lungs" and "doesn't damage printing presses"). Again, and similar to the policyholder in *Social Life Magazine, Inc.*, Delaware Valley's claim falls clearly outside the policy coverage provisions because it does not plead any facts at all, let alone any plausible facts, that its physical property was in fact damaged.

Rather, Delaware Valley's bald assertion that it has sustained direct physical loss due to governmental closures subjects the Complaint to dismissal as a matter of law. The Third Circuit has held that "[i]n ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure." *See, e.g., Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3d Cir. 2002). There, the court affirmed the district court's ruling that there was no coverage for the costs of remediating asbestos under a property policy, inasmuch as the presence of asbestos in the building was "not in such form or quantity as to make the building unusable." *Id.* at 236 (applying New Jersey law); *see also, Motorists Mut. Ins. Co. v. Hardinger*, 131 Fed App'x 823 (3d Cir. 2005) (applying Pennsylvania law) (finding test for coverage is whether functionality of property was nearly eliminated or destroyed or property made useless or uninhabitable as a result of e. coli contamination).

Thus, this Court must dismiss Delaware Valley's Complaint because Delaware Valley cannot set forth any facts to show that it sustained property damage as a result of the Governmental Orders arising out of the COVID-19 pandemic.

### B. The Policy's "Civil Authority" Coverage Part Does Not Apply Because Delaware Valley Had Access To The Insured Premises And There is No Property Damage

Similarly, Delaware Valley has not pled any facts to support its allegation that it is entitled to coverage under the Civil Authority coverage part. The Policy's Civil Authority coverage part requires an action of civil authority to prohibit access to the described (or insured) premises *due to property damage* involving a "dangerous physical condition" within a one-mile radius of the insured premises. Ex. 4 at 27 (Form BP 00 03 01 10).

The COVID-19 pandemic and resulting Governmental Orders are not property damage within the meaning of the Civil Authority coverage part. As the Second Circuit explained in *United Air Lines v. Insurance Company of the State of Pennsylvania*, 439 F.3d 128, 134 (2d Cir. 2006), a civil authority order "designed to prevent, protect against or avoid future damage" does not entitle an insured to coverage. *Id.* In *United Air Lines*, the Court held that any prohibition of access to Ronald Reagan National Airport after the September 11 attacks was not covered by civil authority insurance because the evidence "indicates, not surprisingly, that the government's . . . decision to halt operations at the Airport indefinitely was based on fears of future attacks," and not on prior physical damage. *Id.; see also Dickie Brennan & Co. v Lexington Ins. Co.,* 636 F.3d 683, 686-87 (5th Cir. 2011) (evacuation order issued in New Orleans because of approaching hurricane insufficient to trigger civil authority coverage where no evidence of prior property damage in vicinity of insured property).

Delaware Valley's Complaint fails to provide plausible facts that the Government Orders were issued as a result of damage to nearby property and in response to "dangerous physical conditions," as required by the Policy. The Governmental Orders expressly state, as their purpose, a desire to limit transmission of COVID-19 by imposing social distancing and other density reductions. None of the Orders identify physical damage to property occurring at any specific location, much less at property within one mile of plaintiff's showrooms, as required by the Policy. *See* Ex. 1, Gov. Murphy's Executive Order 103 (Declaring a State of Emergency because "the spread of COVID-19 within New Jersey constitutes an imminent public health hazard"); Ex. 2., Gov. Murphy's Executive Order 107 (instituting "social mitigation strategies for combatting COVID-19 . . . to reduce the rate of community spread of the disease"); Ex 3 Gov. Wolf's Executive Order (ordering the closure of Dine-in Facilities to "help stop the spread of COVID-19"). Social distancing and shut-down orders issued to contain transmission of the virus are akin to prophylactic measures that simply do not trigger Civil Authority coverage. *See United, supra.* Notably, Delaware Valley also does not even allege, in the first instance, that there was property damage to any properties within a one-mile radius of its showrooms.

Therefore, Delaware Valley's Complaint must be dismissed because it sets forth no facts to support a claim under the Civil Authority coverage part.

### C. The Virus or Bacteria Exclusion Bars Coverage

Plaintiff fails to allege facts that satisfy the policy insuring agreements at issue in this matter. Significantly, however, even if the bare assertions that Delaware

Valley suffered physical damage were sufficient (which is denied), the Policy contains the "Virus or Bacteria" exclusion, which specifically excludes "loss or damage caused directly or indirectly by. . . any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease". Ex. 4 at 27, 29 (BP 00 03 01 10). The "Virus or Bacteria" exclusion applies to all of the coverage grants at issue in this matter and is a complete defense to coverage compelling the dismissal of Plaintiff's complaint on this ground alone.

First, in *Gavrilides*, *supra*, the Michigan Circuit Court ruled that an identical virus exclusion barred coverage for the policyholder's business income claims related to the COVID-19 pandemic. *See Gavrilides,* Ex. 5 at 9, 21-22. This is the only decision to date directly addressing whether the COVID-19 virus is subject to the Virus or Bacteria exclusion. However, other Courts have also upheld similarly unambiguous exclusions barring coverage for losses caused by hazardous substances or microorganisms. *See e.g. Sentinel Ins. Co., Ltd. v. Monarch Med. Spa, Inc.*, 105 F. Supp. 3d 464, 472 (E.D. Pa. 2015) (enforcing exclusion of coverage for "[i]njury or damage arising out of or related to the presence of, suspected presence of, or exposure to fungi, bacteria and virus" based on showing that Group A Streptococcus is a bacterium); *Certain Underwriters at Lloyds of London v. Creagh*, 563 F. App'x 209, 211 (3d Cir. 2014) (policy's "microorganism exclusion" precluded coverage for the cost of remediating bacteria that escaped from a decomposed body at the insured's apartment building); *Paternostro v. Choice Hotel Int'l Servs. Corp.,* No. 13-0662, 2014 U.S. Dist. LEXIS 161157 (E.D. La. Nov. 14, 2014) (bacteria/virus exclusion in

commercial liability policy bars coverage for legionella claims against hotel); *Lambi v. Am. Family Mut. Ins. Co.*, No. 4:11-CV-00906-DGK, 2012 U.S. Dist. LEXIS 78563, at *15-*16 (W.D. Mo. June 6, 2012) (communicable disease exclusion in homeowners policy barred insurance coverage for virus claims), *aff'd,* 498 F. App'x 655 (8th Cir. 2013); *Ace Am. Ins. Co. v. Adm'rs of the Tulane Educ. Fund*, No. 07-3749, 2008 U.S. Dist. LEXIS 66299, at *18-*19 (E.D. La. Aug. 28, 2008) (mold, mildew, fungi and other similar organism exclusion bars mold property damage claims); *Clarke v. State Farm Fla. Ins.*, 123 So. 3d 583, 585 (Fla. Dist. Ct. App. 2012) (virus encompassed within exclusion for any disease or virus transmittable from the insured to another person excluded under policy); *Tate v. One Beacon Ins. Co.*, 328 S.W.3d 262, 266 (Mo. Ct. App. 2010) (spore, bacteria and virus exclusion precludes coverage for bodily injury claims arising from mold exposure).

Here, Delaware Valley's claims clearly come within the Virus and Bacteria exclusion. First, the Coronavirus is a "virus." *See, e.g.*, Compl. ¶¶ 15-19. Second, the Government Orders make clear that Coronavirus induces or is capable of inducing physical distress, illness or disease. Ex. 1, New Jersey Executive Order No. 103 ("Coronavirus disease 2019 . . . is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus"). It also is clear that any business losses alleged by Delaware Valley were "caused by or resulting from" the Coronavirus. Comp. ¶ 21. ("[a]s a result of the . . . Governmental Actions . . . it has been unable to use its property" and suffered an insurable loss). Thus, irrespective of how Plaintiff characterizes its losses or claims, they all fall squarely within the broad scope of the

exclusion.[5] Simply put, all of the allegations in the Delaware Valley's Complaint fall squarely within the Virus or Bacteria exclusion.

## V.  CONCLUSION

For the foregoing reasons, this Court should grant Merchants' motion and dismiss Delaware Valley's Complaint.

Respectfully submitted,

/s/ Nicole M. Crowley
Nicole M. Crowley, Esq.
Goldberg Segalla LLP
Attorneys for Defendant Merchants
Mutual Insurance Company

Dated: July 27, 2020

---

[5] Indeed, coverage under the various coverage grants of the Policy must be caused by direct physical loss of or damage to property "caused by or resulting from a Covered Cause of Loss," defined as "Risks of direct physical loss." *See* Ex. 4 at 21-22(Form BP 00 03 01 10). The Virus and Bacteria Exclusion removed viruses as a Covered Cause of Loss or covered risk. *See* Ex. 4 at 35, 37 (Form BP 00 03 01 10)

27152594.v1                                          15