## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

DELAWARE VALLEY PLUMBING
SUPPLY, INC.,

        Plaintiff,

    v.

MERCHANTS MUTUAL INSURANCE
COMPANY et al.,

        Defendants.

No. 1:20-cv-08257-NLH-KMW

**OPINION**

---

**APPEARANCES**:

ASHLEY SOBLE NECHEMIA
ROBERT WINFIELD WILLIAMS
MATTLEMAN, WEINROTH & MILLER, P.C.
401 ROUTE 70 EAST
SUITE 100
CHERRY HILL, NJ 08034

    *Attorney for Plaintiff Delaware Valley Plumbing Supply, Inc.*

NICOLE MICHELLE CROWLEY
GOLDBERG SEGALLA LLP
1037 RAYMOND BLVD
SUITE 1010
NEWARK, NJ 07102

    *Attorney for Defendant Merchants Mutual Insurance Company.*

**HILLMAN**, District Judge

    This matter centers on the impact of the COVID-19 pandemic, and the related, widespread government shut-down orders, on businesses and their insurance policies.  Presently pending before the Court is Defendant Merchants Mutual Insurance

Company's motion to dismiss Plaintiff Delaware Valley Plumbing
Supply, Inc.'s complaint.  For the reasons expressed below, the
Court will grant Defendant's motion and dismiss Plaintiff's
complaint with prejudice.

<u>**BACKGROUND**</u>

Plaintiff is a retail business with showrooms offering
sales and design services for plumbing fixtures for new
construction and renovations.  Plaintiff has two showrooms: one
located in Voorhees, New Jersey, and another in King of Prussia,
Pennsylvania.

To protect itself from harm to its showrooms, Plaintiff
took out an insurance policy with Defendant, which covers both
locations ("the Policy").  The Policy includes coverage for both
"Business Income and Extra Expense," as well as for damage
caused by the actions of "Civil Authority."  However, the Policy
also includes a Virus Exclusion, which states that Defendant
"will not pay for loss or damage caused directly or indirectly
by. . . any virus, bacterium or other microorganism that induces
or is capable of inducing physical distress, illness or
disease."  (ECF No. 11-3, Ex. 4 at 035 and 037).

In March 2020, in response to the spread of the COVID-19
pandemic, Governors Phil Murphy and Tom Wolf of New Jersey and
Pennsylvania, respectively, issued a series of executive orders,
requiring individuals to stay at home and mandating the closure

2

of many businesses.  As a result of those orders, Plaintiff was required to close its showrooms, and suffered damages to its business.  On May 8, 2020, Plaintiff submitted a claim for coverage under the Policy to Defendant; Defendant denied the claim three days later.

Plaintiff then filed a complaint in state court against Merchants Mutual, as well as unnamed John Does (1-10) and ABC Companies (1-10), on June 1, 2020.  (ECF No. 1, Ex. A).  The complaint asserts four claims: two claims for breach of contract related to the Policy for both the Voorhees and King of Prussia locations, and two claims for declaratory judgment under N.J.S.A. § 2A:16-50 *et seq.*, seeking declarations that the losses suffered at both locations were the result of Governmental Actions, and are therefore insured under the Policy and require Defendant to pay the full amount of losses incurred at both locations.

On July 6, 2020, Defendant removed the case to this Court, on the basis of diversity jurisdiction.  (ECF No. 1).  After the Court issued an Order to Show Cause related to jurisdictional pleading issues, Defendant filed an amended notice of removal on July 15.  (ECF No. 7).  Finally, on July 27, Defendant filed the pending motion to dismiss Plaintiff's complaint.  (ECF No. 11).  Plaintiff then filed a brief opposing the motion on August 31, (ECF No. 16), and Defendant filed a reply brief in further

support of the motion on November 12.  (ECF No. 22).  The motion to dismiss is therefore fully briefed and ripe for adjudication.

## DISCUSSION

### I.  Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction over this matter pursuant to 23 U.S.C. § 1332, because there is complete diversity of citizenship of the parties and the amount in controversy exceeds $75,000.

### II.  Legal Standards for Motions to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v.

4

Twombly, 550 U.S. 544, 555 (2007) (alteration in original)
(citations omitted) (first citing Conley v. Gibson, 355 U.S. 41,
47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,
40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v.
Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must
take three steps: (1) the court must take note of the elements a
plaintiff must plead to state a claim; (2) the court should
identify allegations that, because they are no more than
conclusions, are not entitled to the assumption of truth; and
(3) when there are well-pleaded factual allegations, a court
should assume their veracity and then determine whether they
plausibly give rise to an entitlement for relief.  Malleus v.
George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v.
Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,
quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks
"not whether a plaintiff will ultimately prevail but whether the
claimant is entitled to offer evidence to support the claim."
Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416
U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our
decision in Twombly expounded the pleading standard for 'all
civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d
203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in

the coffin for the 'no set of facts' standard that applied to
federal complaints before Twombly.").  "A motion to dismiss
should be granted if the plaintiff is unable to plead 'enough
facts to state a claim to relief that is plausible on its
face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at
570).

     A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.
v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir.
1993).  If any other matters outside the pleadings are presented
to the court, and the court does not exclude those matters, a
Rule 12(b)(6) motion will be treated as a summary judgment
motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**III. <u>Analysis</u>**

     As stated above, Plaintiff asserts four claims against
Defendant: two claims for breach of contract related to the
Policy for both the Voorhees and King of Prussia locations, and
two claims for declaratory judgment under N.J.S.A. § 2A:16-50 *et*

6

*seq.*, seeking declarations that the losses suffered at both locations were the result of Governmental Actions, and are therefore insured under the Policy.  Defendant moves to dismiss on three grounds, arguing that Plaintiff's claims fail because (1) it did not sufficiently plead that it sustained "direct physical loss or damage to property" as required by the "Business Income and Extra Expense" coverage policy (2) it did not sufficiently plead that it sustained "property damage" as required by the "Civil Authority" coverage policy, and (3) because the Policy includes a Virus Exclusion clause which bars coverage for Plaintiffs insurance claims.

Both parties appear to agree that New Jersey law applies here.  Under New Jersey law, the interpretation of an insurance policy is a "question of law."  Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med., 46 A.3d 1272, 1276 (N.J. 2012).  The language of an insurance policy "should be interpreted according to its plain and ordinary meaning." Voorhees v. Preferred Mutual Ins. Co., 607 A.2d 1255, 1260 (N.J. 1992).  Where the terms of the policy are ambiguous and there is doubt regarding the existence of coverage, the ambiguity is ordinarily resolved in favor of the insured.  See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 843 A.2d 1094, 1103 (N.J. 2004). However, where the language of the policy is clear and unambiguous, "the court is bound to enforce the policy as it is

written." <u>Royal Ins. Co. v. Rutgers Cas. Ins. Co.</u>, 638 A.2d 924, 927 (N.J. Super. Ct. App. Div. 1994).  The court "should not write for the insured a better policy of insurance than the one purchased." <u>Buczek v. Continental Cas. Ins. Co.</u>, 378 F.3d 284, 288 (3d Cir. 2004) (citing Vassiliu v. Daimler Chrysler Corp., 839 A.2d 863, 867 (N.J. 2004)).

Another court in this district, faced with a highly similar set of claims in the face of the COVID-19 pandemic, has noted that "courts even within the state of New Jersey have come to differing and split conclusions regarding the interpretation of the term 'direct physical loss.'" <u>N&S Restaurant LLC v. Cumberland Mutual Fire Insurance Company</u>, No. 20-05289 (RBK/KMW), 2020 WL 6501722, at *3 (D.N.J. Nov. 5, 2020). However, the Court here, as that court did, finds that it is unnecessary to address Defendant's first two arguments, because the Virus Exclusion clearly applies and bars coverage.

Under New Jersey law, "exclusions in [an] insurance policy should be narrowly construed." <u>Nav-Its, Inc. v. Selective Ins. Co. of Am.</u>, 869 A.2d 929, 934 (N.J. 2005) (citing <u>Princeton Ins. Co. v. Chunmuang</u>, 698 A.2d 9, 16 (N.J. 1997)).  "Nevertheless, if the exclusion is 'specific, plain, clear, prominent, and not contrary to public policy,' it will be enforced as written." <u>Id</u>. (citing <u>Princeton Ins. Co.</u>, 698 A.2d at 16).

As outlined above, the Policy that covers both of
Defendant's locations explicitly states that Defendant "will not
pay for loss or damage caused directly or indirectly by. . . any
virus, bacterium or other microorganism that induces or is
capable of inducing physical distress, illness or disease."
(ECF No. 11-3, Ex. 4 at 035 and 037).  Plaintiff's Complaint
specifically alleges that its damages were caused by the
government orders requiring it to close its showrooms due to the
COVID-19 pandemic.  (ECF No. 7-1 at ¶¶ 16-22).  Therefore,
"[b]ecause the Stay-at-Home Orders were issued to mitigate the
spread of the highly contagious novel coronavirus, Plaintiff's
losses are tied inextricably to that virus."  Boulevard Carroll
Entm't Grp., Inc. v. Fireman's Fund Ins. Co., No. 20-
11771(SDW)(LDW), 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020).
Accordingly, the Virus Exclusion, by its specific, clear
language, bars coverage for the injuries claimed by Plaintiff
here.

While at the time the parties briefed this motion there was
limited caselaw addressing the impact of the COVID-19 pandemic
on insurance policies, that is no longer the case.  In fact, at
least two other courts applying New Jersey law have been faced
with motions to dismiss based on identical exclusion clauses;
those courts similarly reached identical conclusions to the
Court here and held that the virus exclusion clauses barred

coverage for claims like those brought by Plaintiff.  <u>N&S Restaurant LLC v. Cumberland Mutual Fire Insurance Company</u>, No. 20-05289 (RBK/KMW), 2020 WL 6501722, at *3-5 (D.N.J. Nov. 5, 2020); <u>Mac Property Group LLC v. Selective Fire and Cas. Ins. Co.</u>, No. L-2629-20, 2020 WL 7422374, at *8-9 (N.J. Super. Ct. Nov. 5, 2020).

    Nor are these cases rare or unique examples; a significant number of courts, both in this Circuit and across the country, have analyzed virus exclusion clauses that were either identical or highly similar to the one in Plaintiff's Policy, and consistently reached the same conclusion.  <u>See, e.g.</u>, <u>The Eye Care center of New Jersey, PA v. Twin City Fire Insurance Co.</u>, No. 20-05743 (KM) (ESK), 2021 WL 457890, at *2-3 (D.N.J. Feb. 8, 2021) (coverage barred by Virus Exclusion excluding loss or damage "caused directly or indirectly by" the "[p]resence, growth, proliferation, spread or any activity of ... virus"); <u>Ultimate Hearing Solutions II, LLC v. Twin City Fire Insurance Company</u>, 2021 WL 131556, at *4 (E.D. Pa. Jan. 14, 2021) (coverage barred by Virus Exclusion excluding coverage for loss or damage "caused directly or indirectly by ... [p]resence, growth, proliferation, spread or any activity of ... virus"); <u>Humans & Resources, LLC, D/B/A Cadence Restaurant v. Firstline Nat'l Insurance Co.</u>, No. 20-CV-2152, 2021 WL 75775, at *8 (E.D. Pa. Jan. 8, 2021) (coverage barred by Virus Exclusion excluding

coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); Boulevard Carroll Entm't Grp., Inc. v. Fireman's Fund Ins. Co., No. 20-11771(SDW)(LDW), 2020 WL 7338081, at *2 (D.N.J. Dec. 14, 2020) (coverage barred because "the Policy clearly excludes coverage for damage, loss or expense arising from a virus. Because the Stay-at-Home Orders were issued to mitigate the spread of the highly contagious novel coronavirus, Plaintiff's losses are tied inextricably to that virus and are not covered by the Policy"); Kessler Dental Associates, P.C. v. Dentists Insurance Company, No. 2:20-cv-03376-JDW, 2020 WL 7181057, at *3 (E.D. Pa. Dec. 7, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "any 'virus, bacteria or other microorganism that cause or could cause physical illness, disease or disability'"); Brian Handel D.M.D., P.C. v. Allstate Insurance Co., No. 20-3198, 2020 WL 6545893, at *4 (E.D. Pa. Nov. 6, 2020) (coverage barred by Virus Exclusion excluding coverage for loss or damage caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease"); Mark's Engine Co. No. 28 Restaurant, LLC v. Travelers Indemnity Co. of Connecticut, No. 20-cv-04423, 2020 WL 5938691, at *2, 5 (C.D. Cal. Oct. 2, 2020) (coverage barred by Virus Exclusion excluding coverage for

loss or damage caused by "any virus, bacterium or other
microorganism that induces or is capable of inducing physical
distress, illness or disease"); <u>Mauricio Martinez, DMD, P.A. v.
Allied Ins. Co. of Am.</u>, 20-cv-00401, 2020 WL 5240218, at *2
(M.D. Fla. Sept. 2, 2020) (coverage barred by Virus Exclusion
excluding coverage for loss or damage caused by "[a]ny virus,
bacterium or other microorganism that induces or is capable of
inducing physical distress"); <u>Franklin EWC, Inc. v. Hartford
Financial Servs. Grp., Inc.</u>, 20-cv-04434, 2020 WL 5642483, at *2
(N.D. Cal. Sept. 22, 2020) (coverage barred by Virus Exclusion
stating that "[w]e will not pay for loss or damage caused
directly or indirectly by [virus]. Such loss or damage is
excluded regardless of any other cause or event that contributes
concurrently or in any sequence to the loss"); <u>Diesel
Barbershop, LLC v. State Farm Lloyds</u>, 20-CV-461, 2020 WL
4724305, at *6 (W.D. Tex. Aug. 13, 2020) (coverage barred by
Virus Exclusion stating that insurer "does not insure for a loss
regardless of 'whether other causes acted concurrently or in any
sequence within the excluded event to produce the loss' " and
finding that "it was the presence of COVID-19 in ... Texas that
was the primary root cause of Plaintiffs' business temporarily
closing").

    In an attempt to avoid application of the Virus Exclusion
at this stage in the litigation, Plaintiff contends that the

question of whether the exclusion is applicable here simply cannot be decided by this Court at the motion to dismiss stage. Plaintiff appears to make two separate arguments for why this is the case.

First, Plaintiff claims that "a complaint is not subject to dismissal under Rule 12(b)(6) where an insurer seeks dismissal of the complaint based on an exclusion contained within the policy." (ECF No. 16 at 25) (citing Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3rd. Cir. 2006)). Plaintiff appears to argue that it has not conceded that the coronavirus qualifies as a "virus" under the Virus Exclusion, and that the Court may not take judicial notice of such a fact; Plaintiff further contends that Defendant has failed to put forward any case law "to support the proposition that a complaint may be dismissed on a 12(b)(6) motion based on an exclusion contained within the insurance policy." Id.

However, regardless of whether Defendant raised such case law, "[t]he Third Circuit and courts within this Circuit have regularly granted motions to dismiss in insurance cases when the plaintiff's allegations fall squarely within the policy's exclusion to coverage." N&S Restaurant LLC, 2020 WL 6501722 at 3 (citing Brewer v. U.S. Fire Ins. Co., 446 F. App'x 506, 510 (3d Cir. 2011). See also The Eye Care Center of New Jersey, 2021 WL 457890, at *2 ("When an exclusion clearly applies to a

13

complaint's allegations, a court may dismiss the complaint."). Similarly, the Court disagrees with Plaintiff's implication that the question of whether COVID-19 qualifies as a "virus" for the purposes of the Virus Exclusion is an open question of fact that requires further proceedings or discovery.  Plaintiff's Complaint itself explicitly relies upon multiple government orders and emergency declarations, which make abundantly clear that "Coronavirus disease 2019 ("COVID-19") is a contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus."  (ECF No. 11-3, Ex. 1 at 1).  See also Mac Property Group LLC, 2020 WL 7422374 at *8 n.1 (finding that the same orders "specifically identify COVID-19 as a virus"). Plaintiff's own Complaint, and the documents on which it relies, affirmatively establishes the fact that the coronavirus is a "virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease" under the Virus Exclusion clause.  Further briefing or discovery on this point is entirely unnecessary.

Second, Plaintiff argues that it does not concede that the Virus Exclusion is enforceable, asserting that the regulatory estoppel doctrine should block enforcement of the exclusion, and that further discovery regarding the representations made by industry groups to state regulators is necessary before its enforceability may be properly determined by the Court.  The

14

Court first notes that Plaintiff raises this argument for the first time in a short discussion at the end of its opposition brief.  Plaintiff's complaint raises no claim for regulatory estoppel.  Regardless, the Court finds that Plaintiff's regulatory estoppel argument fails on its face.

Plaintiff fails to describe the dimensions or elements of a regulatory estoppel argument under New Jersey law, and cites to only one New Jersey case that applies regulatory estoppel, Morton Int'l, Inc. v. Gen. Acc. Ins. Co. of Am., 134 N.J. 1 (1993).  The Court's research has turned up very sparse case law in New Jersey regarding regulatory estoppel, with the cases citing the doctrine seeming to relate almost entirely to the specific type of clause, a standard pollution exclusion, at issue in the Morton case.

In Morton, the New Jersey Supreme Court held that insurers were estopped from relying on an interpretation of a pollution exclusion clause that was inconsistent with prior representations made to regulatory authorities regarding the impact and scope of that clause.  Specifically, Morton found that the insurance industry had failed to "candidly reveal[] the extent of the contraction in coverage intended by the pollution-exclusion clause," which stopped regulators from "[making] informed judgments concerning the rate and coverage issues implicated by the clause" and meant that "commercial and

governmental insureds [were not] aware that insurance coverage for environmental pollution would be sharply restricted." Id. at 79.  Accordingly, the New Jersey Supreme Court held that the insurers there could not rely on the broader interpretation of the exclusion clause which extended beyond the representations made to regulators.

Here, Plaintiffs have entirely failed to point to a similar misrepresentation regarding the scope of the Virus Exclusion, and to demonstrate how the interpretation advanced by Defendant is inconsistent with prior representations made by the insurance industry to regulators.  In attempting to make such a showing, Plaintiff provides only one quote from an industry filing; the citation for that quote simply refers the Court to consult a complaint from a case in the Western District of Pennsylvania, 1 S.A.N.T., Inc. v. Berkshire Hathaway et al, No. 2:20-CV-00862-WSS (W.D. Pa.), which makes a similar regulatory estoppel argument and relies upon two filings made by two insurance industry trade groups, the Insurance Services Office, Inc. ("ISO") and the American Association of Insurance Services ("AAIS"), to regulators in 2006.

Perhaps unsurprisingly, given the wide-scale impact of the COVID-19 pandemic, this is not the only case in which this argument has been made regarding those exact industry filings. Multiple courts in the Eastern District of Pennsylvania have

recently been presented with similar arguments under
Pennsylvania's regulatory estoppel doctrine, relying on the
exact same documents.  In Humans & Resources, LLC, D/B/A Cadence
Restaurant v. Firstline Nat'l Insurance Co., No. 20-CV-2152,
2021 WL 75775 (E.D. Pa. Jan. 8, 2021), the court analyzed the
2006 ISO circular, with the following result:

> "[T]his Court is flatly unable to discern how [the
> statements in the filing] are contradictory or contrary
> to the position which Defendant takes here. To be sure,
> Defendant has denied Plaintiff's claim on the grounds
> that the insurance policy which it issued was never
> intended and specifically did not provide coverage for
> business closure due to a pandemic, disease-causing
> agents or unorthodox transmission of infectious
> materials, microbes, viruses, or bacteria. In other
> words, the claim's denial is premised upon the very same
> reasons advanced to justify approval of the virus
> exclusion in the first place. We therefore cannot agree
> with Plaintiff's argument that the virus exclusion
> should now be disregarded on the basis of regulatory
> estoppel." Id. at 9.

At least four other Pennsylvania federal courts, faced with
this exact same argument, have recently reached essentially
identical conclusions.  TAQ Willow Grove, LLC, 2021 WL
131555, at *8-9); Newchops Restaurant Comcast, 2020 WL
7395153, at *9-10; Kessler Dental Associates, P.C., 2020 WL
7181057, at *3; Brian Handel D.M.D., P.C., 2020 WL 6545893
at *5.

While those cases analyzed the regulatory estoppel
arguments before them under Pennsylvania law, not New
Jersey law, the basis for their holdings applies just the

same here.  Having reviewed the documents cited to by
Plaintiff for the first time in its opposition brief the
Court agrees with the consistent findings of the
Pennsylvania federal courts.  The industry filings cited by
Plaintiff make clear that the Virus Exclusion clause would
bar coverage for loss or damages caused by a virus like
COVID-19.  Plaintiff's opposition brief therefore entirely
fails to demonstrate or adequately allege any inconsistency
between this reasoning advanced to justify the approval of
such Virus Exclusion clauses and the interpretation of the
Virus Exclusion clause relied upon by Defendant in this
case.  Accordingly, Plaintiff's regulatory estoppel
argument fails, and the Court finds that further discovery
on this topic is unnecessary.

Following the overwhelming trend of courts across the
country, the Court finds that "Defendant did not withhold
benefits due because coverage was excluded under the Virus
Exclusion.  Absent an actual withholding of benefits due,
there is no breach of contract," and Plaintiffs are not
entitled to a declaration that their losses are covered
under the policy.  N&S Restaurant LLC, 2020 WL 6501722 at
*5.  While the Court recognizes the significant harm
suffered by individuals and businesses as a result of the
COVID-19 pandemic, the Policy provided by Defendant

explicitly barred coverage for the losses allegedly
suffered by Plaintiff here.  The Court may not rewrite the
contract for the benefit of either party.  Plaintiff's
claims must be dismissed.

**CONCLUSION**

For the reasons outlined above, Defendant's motion to
dismiss (ECF No. 11) will be granted.  As the language of
the Virus Exclusion is clear and precludes coverage for the
damages Plaintiff alleges, the Court will dismiss
Plaintiff's claims with prejudice.

An appropriate Order will be entered.


Date: February 16, 2021            /s Noel L. Hillman
At Camden, New Jersey         NOEL L. HILLMAN, U.S.D.J.

19